Reconstruction Finance Corporation, Appellee, v. Edward B. Lucius et al., Defendants. Roland C. Foster and Eli A. Rysdon, Appellants.

Gen. No. 42,528.

58

Opinion filed June 30, 1943.

Melvin F. Abrahamson, of Naperville, and Lucius, Buehler & Lucius, of Chicago, for certain appellant; Albert E. Lucius and Ralph F. Trenchard, both of Chicago, of counsel.

Tinsman, Blocki & Heeren, of Chicago, for certain other appellant.

Lee Walker, M. O. Hoel and R. J. Thompson, all of Chicago, for appellee.

Mr. Presiding Justice Burke delivered the opinion of the court.

In a complaint filed in the circuit court of Cook county on December 5, 1938 by the Reconstruction Finance Corporation against Edward B. Lucius and Rollin C. Foster, plaintiff alleged that it was the legal

holder, for value, of six demand collateral notes executed by Charles R. Fuller, as trustee, payable to the Central Trust Company of Illinois, the notes bearing various dates from October 15, 1930 to April 21, 1931; that they were indorsed in blank and held by plaintiff; that the maker, the two defendants and E. A. Rysdon and A. R. Floreen entered into an agreement dated October 10, 1930, a copy of which was attached to the complaint as an exhibit, and that the notes were given by the maker pursuant to the terms of the agreement. An amendment was filed to the complaint, setting up that on July 25, 1931 the Central Trust Company of Illinois consolidated with the Chicago Trust Company to form the Central Republic Bank and Trust Company, and that the consolidated bank became vested with and continued to hold the notes until they were transferred to the plaintiff. By leave of court, plaintiff made Eli A. Rysdon an additional party defendant. By stipulation the cause was dismissed as to Edward B. Lucius. Roland C. Foster filed an answer and an amended answer wherein he denied that plaintiff was the legal holder for value of the notes; that it was a holder in due course; that plaintiff paid any consideration for the notes or gave anything of value therefor either to defendants or to the payee; that defendant was liable to plaintiff upon the notes by reason of insufficiency of the allegations of the complaint; and asserted that plaintiff did not come into possession of the notes until more than a year after they had been executed; that plaintiff at the time it agreed with the payee to accept the notes neither knew nor relied upon the agreement of October 10, 1930, but that the notes were considered and accepted at their face value as the notes of Charles R. Fuller upon his credit and reliability and not as the notes of defendant; that liability, if any, of the defendant, was barred under the statute of limitations on the ground that the cause of action accrued more than five years

before the commencement of the suit. The answer of this defendant also denied liability for the reason that Adolph R. Floreen, one of the parties to the agreement, was at that time vice president of the Central Trust Company of Illinois, and that the loans made by the Central Trust Company of Illinois were never approved by the board of directors of that bank, contrary to the provisions of section 10 of the Banking Act (sec. 10, ch. 16½, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 10.10]); that the loans were unlawful, illegal and void, and that the Central Trust Company of Illinois, plaintiff's assignor, participated in transactions that were unlawful, illegal and void. In a reply plaintiff alleged that the notes did not come into its possession until June 27, 1932, more than a year after their execution; that at the time of the execution and delivery of the first of the notes a copy of the agreement was delivered to the Central Trust Company of Illinois, which company knew and understood that Charles R. Fuller, the maker of the notes, was not to be liable for the full amount of the notes, but that the parties to the agreement were each to be liable for one fifth upon said notes in accordance with the provisions and terms of the agreement; and that the notes were transferred and delivered to plaintiff on or about June 27, 1932. The reply did not state when the copy of the agreement was delivered to plaintiff, but stated that it has in its possession an executed copy thereof. The reply further denied that the action was barred by the statute of limitations; admitted that Adolph R. Floreen was at the time of the execution of the notes and delivery thereof to the Central Trust Company of Illinois, a vice president of that bank; admitted that no application for the loans by the bank was submitted to or approved by the board of directors of that bank prior to the making of the loan evidenced by the notes; and denied that the loans were unlawful, illegal and void. Plaintiff

moved for the entry of a summary judgment, attaching to its motion affidavits, the purport of which was that plaintiff lent to the Central Trust Company of Illinois $90,000,000; that a considerable portion thereof then remained due and owing; that to secure the indebtedness the Central Trust Company of Illinois indorsed, pledged and delivered to plaintiff the notes described in the complaint; that plaintiff was then the holder of the notes as pledgee of the Central Trust Company of Illinois; and that the agreement attached to the complaint was also delivered to the Central Trust Company of Illinois. It is not stated in the affidavits when the agreement was delivered, and it is not specifically stated that it was delivered with the notes. These affidavits were made by B. A. Mattingly, who, at the time of the making of the affidavits, was an employee of plaintiff, and W. A. Sills, who was assistant vice president of the Central Trust Company of Illinois during the time the loans were made. An exhibit attached to the affidavit of W. A. Sills purports to be part of the files and an original record of the Central Trust Company of Illinois entitled, "Information Sheet," containing certain information relative to the loans evidenced by the six notes sued upon. On this sheet, dated October 18, 1930, appears the following: "This is the transaction of a syndicate, the members of which have agreed to buy as many as 100 shares of the stock of the Commonwealth Trust and Savings Bank at 175 a share, if that much stock is offered. (See syndicate agreement with collateral)." Under date of January 3, 1931 appears the following: "New loan $1,500, 5½%. This is the obligation of a syndicate formed to protect the market on Commonwealth Trust & Savings Bank stock. Demand." There are four other similar entries. To the motion for summary judgment the defendant filed an affidavit of merits substantially as in his amended answer. He attached to his affida-

vit certain exhibits in the form of letters from a representative of the Central Trust Company of Illinois and later of the attorneys for that bank, seeking to collect from him (Fuller) and later from Foster upon the agreement of October 10, 1930. Defendants assert this indicates that at the time such loans were written, approximately two years after the notes were delivered to plaintiff, the syndicate agreement was in the possession and control of the Central Republic Bank and Trust Company. Mr. Foster also filed a motion to dismiss the action pursuant to Section 48 of the Civil Practice Act [Jones Ill. Stats. Ann. 104.048], for the reason that it appeared from the reply of plaintiff and other pleadings that plaintiff must offer extrinsic parol evidence to show that plaintiff knew of and relied upon the syndicate agreement at the time such consideration, if any, as it paid, was paid for the notes; that Fuller's actions were within the scope of his authority as set forth in the agreement as to quantities of stock purchased and amounts paid therefor, etc.; that plaintiff comes within a class entitled to claim that the syndicate agreement was a contract made for its benefit; and that the cause of action alleged did not arise out of a contract in writing to which the ten-year statute of limitations was applicable, but arose, if at all, by reason of an implied contract barred by the five-year statute of limitations. The court entered an order that all pleadings, motions and affidavits filed on behalf of plaintiff and defendant Foster should stand as such as to the defendant Rysdon. The court allowed plaintiff's motion and entered a separate judgment against each of the defendants for $2,154.33 and costs. The court also denied defendants' motions to dismiss the action, made pursuant to section 48 of the Civil Practice Act. This appeal followed.

The syndicate agreement of October 10, 1930 reads:
"That, Whereas, the purchasers desire to form a syndicate for the purpose of purchasing certain shares

of the capital stock of the Commonwealth Trust & Sav-- ings Bank, a banking corporation of Illinois, not, however, exceeding one hundred (100) shares and at a price not exceeding One Hundred Seventy-Five Dollars ($175) per share, and to that end desire that such stock as may be purchased be taken in the name of Charles R. Fuller as Trustee, and that, he as Trustee, shall have power to borrow upon pledge of such stock as collateral. Now, Therefore, in consideration of the premises and of the covenants and agreements hereinafter made, it is agreed as follows: 1. The Trustee shall purchase from time to time as available, not more than a total of One Hundred (100) shares of such stock and shall pay therefor not more than One Hundred Seventy-Five Dollars ($175) per share. The Trustee is authorized to borrow against said stock such amount as may be loaned thereon and to pledge the stock therefor, and the Purchasers hereto agree to furnish, on request of the Trustee, their pro rata share of such additional sum as may be needed between the amount of the purchase price and the amount borrowed thereon to pay for such stock. The Trustee shall thereupon give receipts to each of the Purchasers evidencing the amount paid by such purchaser and the quantity of such stock purchased. 2. The parties hereto agree with each other and with the Trustee, for their own and the Trustee's benefit and for the benefit of any bank loaning funds upon such stock as security, that the signature of the Trustee upon any note for such borrowing, is hereby authorized by them and that they authorize such borrowing and agree to be bound upon such note as if they and each of them had individually signed said note, but to the extent only of such total borrowing as their individual interest bears, namely, one-fifth thereof. 3. The parties hereto agree that an executed copy of this agreement may be left with such bank as the Trustee may borrow from, in the manner aforesaid, for the

purpose of indicating to said bank the authority of said Trustee to borrow within the limits and upon the basis of liability hereinabove set forth. 4. It is agreed that such shares of stock, or any part thereof, shall be sold at such times and in such amounts and at such prices as the majority of the purchasers shall from time to time hereafter agree, and that the proceeds realized upon such sale shall, after pro rata liquidation of any note obligation, be distributed among the purchasers. 5. The parties hereto further agree to bear their pro rata expense of any interest which may become due upon any note or notes given by such Trustee pursuant hereto. 6. This agreement shall continue for not longer than the term of two years, at which time if such stock shall not have been fully sold and any obligations thereon not fully liquidated, such stockholdings that the syndicate may have shall be liquidated at such prices as a majority of the syndicate shall agree, and the proceeds after payment of any indebtedness upon any outstanding note, shall be divided pro rata among the purchasers. 7. The Trustee shall vote any such stock standing in his name as Trustee at any stockholders' meeting in accordance with the written instruction previously given of a majority of the purchasers. 8. The Trustee agrees upon request of any of the purchasers, to give to such purchaser a statement showing the quantity of stock purchased, the date when purchased, the amount paid therefor and the amount borrowed thereon and such other data as may fully set forth the holdings of the Trustee for the benefit of the purchasers.''

It will be observed that the agreement authorized the trustee, Fuller, to borrow against the stock such amount as might be loaned thereon and to pledge the stock therefor, and for the benefit of any bank loaning the funds upon the stock as security that the signa-

ture of Fuller upon any note for such borrowing was authorized. The members of the syndicate agreed to be bound upon any note so given to a bank by Fuller "as if they and each of them had individually signed said note," but to the extent only of one fifth of such total borrowing. The parties agreed that an executed copy of the agreement might be left with any such bank for the purpose of indicating to the bank the authority of the trustee to borrow within the limits and upon the basis of liability set forth.

The first criticism leveled at the judgment is that plaintiff did not make out a case on the pleadings; and that the court misconceived the nature of plaintiff's cause of action which although asserted in the form of a negotiable chose in action, the relief sought was based on a non-negotiable chose in action. Defendants point out that the first paragraph of section 31 of the Civil Practice Act (sec. 155, ch. 110, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 104.031]) provides that the plaintiff must state a cause of action. Defendants assert that their liability, if any, must be predicated upon the syndicate agreement; that under this agreement it became essential to aver and prove not only that the loans were made but that they were made for the purpose stated in the agreement and that the proceeds were used by Fuller in the purchase of stock at not more than the price stipulated and for the number of shares contemplated; that no such averments appear in the complaint or the affidavits; that it must appear from the complaint that after the execution and delivery of the syndicate agreement Fuller, pursuant to the authority given him, did, in fact, in addition to borrowing the funds represented by the notes, use such funds in the manner provided in the agreement. Defendants state that an analysis of the complaint and the affidavits in support of the motion for summary judgment shows that no claim was made that the right of action arose out of the execution and delivery of

the agreement and the performance of the conditions of the agreement, or that plaintiff claimed to be a beneficiary thereunder; that plaintiff's cause of action is solely upon the notes and that since the defendants are not the makers of the notes they are not liable thereon under the provisions of section 18 of the Negotiable Instruments Act (sec. 38, ch. 98, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 89.038]) that "no person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided." Defendants maintain that it is apparent that the exception intended was to cover those cases where the signature of the party had been made by a duly authorized agent, and calls attention to section 19 of the Negotiable Instruments Act (sec. 39, ch. 98, Ill. Rev. Stat. 1941 [Jones Ill. Stats Ann. 89.039]) that "the signature of any party may be made by a duly authorized agent." Defendants point out that in the instant case the notes do not bear the signatures of the defendants, are not signed by the defendants as required by section 18, nor do they bear the signatures of such persons by a duly authorized agent, as provided in section 19. Defendants comment on the fact that plaintiff made no attempt to comply with section 22 of the Civil Practice Act (sec. 146, ch. 110, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 104.022]) which requires the assignee of a non-negotiable chose in action to aver in his pleadings how and when he acquired his chose in action and that such averments be under oath. Defendants declare that from the circumstances of plaintiff's noncompliance with section 22 of the Civil Practice Act, it appears that plaintiff elected to pursue a cause of action based on a negotiable chose in action, and suggest that if the syndicate agreement is coupled with the notes to form, as a basis for a cause of action, a single integrated agreement upon a breach of which plaintiff relies for recovery, the negotiability is destroyed, and that hence the cause of action, if any

there be, is on a non-negotiable chose in action, and that in such case the pleadings are bad for lack of compliance with section 22 of the Civil Practice Act. Defendants urge that the notes and the syndicate agreement combined as the basis for a cause of action, did not constitute a chose in action on a negotiable instrument, but on the contrary consisted of a non-negotiable chose in action, and that plaintiff adopted the form of action for a negotiable chose in action, without complying with section 22 of the Civil Practice Act. Defendants refer us to the definition of what constitutes a negotiable instrument under sections 1 and 2 of the Negotiable Instruments Law (secs. 21 and 22, ch. 98, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 89.021 and 89.022]) and state that the six notes, coupled with the syndicate agreement, could not be held to constitute an unconditional promise to pay money.

In reply to these arguments plaintiff states that·the action was not brought upon the syndicate agreement, but upon the six notes executed by Fuller, as trustee, and that the syndicate agreement was brought into the case as evidential matter to establish the identity of the parties who were liable for payment of the notes. We agree with plaintiff that section 22 of the Civil Practice Act is not applicable as plaintiff is not suing as the assignee and owner of a non-negotiable chose in action, but as the holder of the notes. (*Ryan v. Klafter*, 309 Ill. App. 136 (Abst.) We also agree with the contention of plaintiff that under the Negotiable Instruments Act, if a note is signed by one merely "as trustee" it is competent to prove that it was the understanding of the parties that the one signing as trustee was not to be liable, but that other persons were to be liable and recovery will be allowed not against the trustee but against such other persons. *Tampa Investment & Securities Co. v. Taylor*, 272 Ill. App. 541; *In re Estate of Maloney*, 296 Ill. App. 179. It is undisputed that Charles Fuller, as trustee, had authority to

borrow the money from the lending bank and had authority to sign the note. The syndicate agreement contemplated that a copy of the agreement might be left with the bank to evidence Fuller's authority by his signature to bind all the parties to the syndicate. It is clear from the cases that if the bank (plaintiff's transferor) had attempted to enforce collection of the notes against Fuller, it would by reason of the syndicate agreement have been defeated to the extent of the excess over his personal liability. It is equally clear that the lending bank could have recovered from the individuals who signed the syndicate agreement to the extent of one fifth from each. Since the notes were indorsed and delivered to the plaintiff after maturity the plaintiff stands in exactly the same position with respect to the defendants as the transferor and the rights accruing from the syndicate agreement pass with and as an incident to the notes. We also agree with plaintiff that it was not necessary to allege and prove that it had knowledge and relied upon the syndicate agreement when it took the notes as collateral security. As stated in the *Ryan v. Klafter* case, the law is well settled that the assignment of a note carries with it not only all security relating thereto, but also all rights and remedies pertaining thereto. Answering defendants' statement that after the pledge of the notes to plaintiff by the bank, defendants received letters from the bank's attorneys demanding payment, plaintiff correctly concludes that a pledgee may permit the pledgor to collect pledged assets without affecting the validity of the pledge as against the obligor.

The contention of defendants that it was necessary for plaintiff to aver and prove that the loans were made to Fuller as trustee to enable him to purchase not more than 100 shares of stock of the Commonwealth Trust and Savings Bank at not more than $175 per share and that the proceeds of the loan were so used by Fuller, is not valid. This action is

not brought by a party to the syndicate agreement who is seeking to enforce it. It is an action upon notes given to a bank upon which the defendants agreed to be bound. The provision of the agreement with respect to the number of shares to be purchased and the amount to be paid therefor were for the government of the trustee in relation to the syndicate members rather than for the government of the bank in relation to the trustee. This is true not only from the language of the agreement but also because it would never be possible for the bank to assure itself that the trustee had not violated the limits imposed and that no amount of inquiry by the bank on this subject would be adequate since the trustee might conceivably have purchased more than the number of shares permitted and might have borrowed from other banks on the stock, which other banks might likewise be ignorant of the trustee's violation of his duties. It will be observed that there is nothing in the record to indicate that the trustee in fact purchased more than 100 shares or paid more than $175 a share. The notes sued on describe as collateral certain shares of stock, but the aggregate of all the shares described in the notes is 60 shares. No averment of noncompliance with the agreement is to be found in defendants' answer, or in their affidavits. As stated, had defendants so pleaded, we are of the opinion that such a defense would not be tenable.

The second point presented by defendants is that the court erred in disregarding their plea of the five-year statute of limitations. Defendants point out that the six notes sued upon contain no reference to the syndicate agreement or to the defendants, and that the syndicate agreement does not mention or describe the six notes or the Central Trust Company of Illinois or its successors. They assert that the allegation that the notes were given pursuant to the agreement is not an averment of fact, but a mere conclusion of the

pleader. Defendants contend that oral testimony was necessary to connect the plaintiff or its assignor with both the notes and the agreement and to show that the notes and the agreement were interrelated parts of the cause of action asserted. Defendants declare that it is apparent that plaintiff, in its affidavits in support of its motion for summary judgment, attempted to supply the missing elements in the contract; that affiant, W. A. Sills, averred that if he were a witness he could competently testify that the syndicate agreement was taken by the Central Trust Company of Illinois at the time the first of the notes was made, that the agreement remained in the possession of said bank and was in its possession at the time of the making of the loans evidenced by the other five notes; and that affiant, who was assistant vice president of the bank during the time the notes were made, knew and understood that Fuller was not to be liable for the full face amount of the notes, but that defendants were to be liable upon the notes each to the extent of one fifth thereof in accordance with the agreement. Defendants submit that such testimony contained in plaintiff's affidavits in support of the motion for summary judgment constituted intrinsic parol evidence, offered to explain the terms of the contract and to identify the parties and their relation to the contract, and that the fact that the contract as declared upon by plaintiff as a cause of action required such explanation brings such contract within the purview of *Railway Passenger & Freight Conductors' Mut. Aid & Ben. Ass'n v. Loomis,* 142 Ill. 560, and *Mowatt v. City of Chicago,* 292 Ill. 578, and that the action thereon should have been barred by the five-year statute of limitations. (Sec. 16, ch. 83, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 107.275].) Defendants also maintain that the agreement was not part of the contract sued upon but at most constituted evidence of an implied contract on the part of the defendants to pay the notes;

that the position of plaintiff is that the notes constituted a contract under which it sought to recover, and that the liability of defendants to pay the notes arose by virtue of their having entered into the agreement; that this constitutes an averment of an evidentiary conclusion; that by merely declaring on the notes and averring a liability upon defendants by reason of the syndicate agreement plaintiff could not thereby merge the syndicate agreement into the notes as an integral part of the contract forming its cause of action, citing *Knight v. St. Louis, I. M. & S. Ry. Co.,* 141 Ill. 110. As we have held that the instant suit is based on the notes, the ten-year statute of limitations is applicable. Actions on promissory notes, written contracts or other evidence of indebtedness in writing may be commenced within ten years after the cause of action accrued. (Sec. 17, ch. 83, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 107.276].) As plaintiff sued the holder of promissory notes and brought its action within ten years after the cause of action accrued, it was not barred by the statute of limitations. We have read the cases cited by the respective parties and are of the opinion that the cases of *Jones v. Supreme Lodge Knights of Honor,* 236 Ill. 113, and *Mowatt v. City of Chicago,* 292 Ill. 578, are not applicable to the factual situation before us. Our view is that whether the instant cause of action be regarded as founded on the notes or the syndicate agreement, or the notes and the syndicate agreement, it is not barred by the five-year statute of limitations. As to defendants' criticism that the allegation that the notes sued upon were notes given pursuant to the agreement is not an averment of fact but a conclusion of the pleader, we observe that many allegations commonly made and yet accepted as proper pleadings are stated in the form of conclusions. The concepts "ownership," "possession," "promised," "committed an assault," "negligently," "fraudulently," "did perform said prom-

ise," "holder" etc., are deemed to be ultimate facts and are pleadable in the above language, yet elements of legal conclusions are involved in every one of them. What is law, what are facts and what is evidence for pleading purposes, can be determined only by a court's consideration of the practical task of administering a particular litigation. We are satisfied that the allegation that the notes sued upon were notes given pursuant to the agreement, although in the nature of a conclusion of fact was proper pleading. From the record before us there is no doubt that the notes sued upon were given pursuant to the syndicate agreement.

Defendants next allege that the loans made to Fuller and evidenced by the notes were unlawful under the provisions of section 10 of the Banking Act. It is alleged in the answer and admitted by the reply of plaintiff that Floreen, one of the parties to the agreement, was at the time of the execution of the notes and delivery thereof to the Central Trust Company of Illinois, a vice president of that bank, and that the loans were not submitted to or approved by the board of directors of that bank prior to the making of the loans evidenced by the notes. Defendants rely on the last paragraph of section 10 of the Banking Act (sec. 10, ch. 16½, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 10.10]) as follows:

"It shall not be lawful for any bank to loan to its president, or to any of its vice-presidents or its salaried officers or employees, or to corporations of firms controlled by them, or in the management of which any of them are actively engaged, until an application for such loan shall have been first approved, both as to security and amount, by the board of directors."

Plaintiff calls our attention to the paragraph immediately preceding the above language in the same section:

"Every such loan made in violation of the provisions hereof shall be due and payable according to its terms and the remedy for the recovery of any money loaned in violation of the provisions hereof or for the enforcement of any agreement collateral or otherwise made in connection with any such loan shall not be held to be impaired, affected or prohibited by reason of such violation, but such remedy shall exist notwithstanding the same. But every director, or officer, of any such association, who shall violate, or participate in, or assent to such violation, or who shall permit any of the officers, agents or servants of the association to violate the provisions hereof, shall be held liable in his personal and individual capacity for all damages which the association, its shareholders or any other person shall have sustained in consequence of such violation."

This statute plainly provides that even if a loan be made in violation thereof the right to recover shall not be impaired, affected or prohibited by reason of such violation, but such remedy shall exist notwithstanding the same. In *Nelson & Co. v. Leiter,* 190 Ill. 414, the Supreme Court stated that the purpose of the enactment is to protect the interests of depositors and stockholders. At that time there was no provision preserving the right of action in the bank to recover where the statute was violated. Nevertheless, the court said (24):

"There is no express declaration in the section that loans in excess of the statutory limitation shall not be collectible, and to so construe the section would be to defeat the very purpose which prompted the adoption of the section."

The Supreme Court of the United States adheres to this rule, *Union Gold Mining Co. v. Rocky Mountain Nat. Bank,* 96 U. S. 640. We conclude that the trial

court was right in rejecting defendants' contention that the asserted violation of section 10 of the Banking Act constituted a defense to the action.

Defendants argue that the syndicate agreement shows that it was executed for the purpose of artificially influencing prices, that its purpose was against the public interest, that it was contrary to public policy and therefore void. They state that it is apparent that the Central Trust Company of Illinois knew that the stock was purchased for the purpose of protecting the market on Commonwealth Trust and Savings Bank stock from the time the original loan was made; that the purpose of the arrangement indicated by the syndicate agreement, together with the deposit thereof with the bank, and the memorandum of the intent thereof as shown from the records of the bank, was to enter into an agreement for artificially influencing the price of the bank stock; that this purpose was against the public interest and therefore contrary to public policy and void. The payee was not a party to the agreement and defendants made no effort to show that it (the payee) was in any way interested in an illegal manipulation of the market. The public policy of Illinois, as declared by our Supreme Court, is that banking laws should be construed with the object of protecting depositors and the public. *Central Republic Trust Co. v. Evans,* 378 Ill. 58. The record in this case does not show an intent of unlawful manipulation of the market in the Commonwealth Trust and Savings Bank stock. Even if the record did so show the public policy of this State would not permit defendants to prevail in such a defense.

Finally, defendants insist that the court erred in granting the motion for summary judgment; that such procedure searches the record, as does a demurrer; that it is a harsh remedy in the nature of an inquisition as to whether there is an issue of fact to be tried; that it is to be construed strictly against plain-

tiff and liberally in favor of the defendants; and that if, as in the instant case, the defense is arguable, apparent and made in good faith, it must be denied and a trial had not upon the affidavits but upon the issues. The court determined that there were no factual issues to be decided. We agree with plaintiff that the record does not disclose a single issue of fact. It presented purely questions of law. We are convinced that the court ruled correctly on the points presented and the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

HEBEL and KILEY, JJ., concur.