(No. 34709.—

Louis B. Allen, Jr., Appellee, *vs.* Marie E. M. Meyer, Appellant.

*Opinion filed June 20, 1958—Rehearing denied September 15, 1958.*

GROBLE, O'FLAHERTY & HAYES, of Chicago, (RAYMOND H. GROBLE, JR., and PAUL B. O'FLAHERTY, of counsel,) for appellant.

ELMER GERTZ, of Chicago, for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This action was brought in the superior court of Cook County to compel specific performance of an alleged contract for the sale of real estate. The trial court sustained the plaintiff's motion for the entry of a summary decree. A freehold being involved, defendant appeals directly to this court and contends that plaintiff's cause of action is barred by the Statute of Frauds and that, in any event, a factual question was presented on the pleadings which precluded the entry of summary judgment.

It would prolong this opinion unduly to set forth fully the pleadings of the parties; however, a recitation of their essence is necessary to adjudication of the defendant's claim that the pleadings precluded the entry of summary judgment.

By his complaint, plaintiff alleged that the defendant was the owner of certain real estate; that there had been a verbal agreement between plaintiff and defendant that the real estate would be sold by defendant to plaintiff for $200, subject to outstanding real-estate taxes and a pending mortgage foreclosure. He further alleged that upon

the making of this agreement, the plaintiff delivered his check for $200 in payment for said conveyance to an attorney "as Trustees for the parties." (Subsequent pleadings disclosed that this attorney was related to the defendant and had advised the defendant relative to the transaction.)

The complaint further states that the defendant accepted the check in full payment for the conveyance and executed a deed in conformity therewith, but that thereafter the defendant took the deed from the attorney "in trust" for the sole purpose of obtaining her husband's signature in waiver of dower. It was further alleged that shortly thereafter the defendant wrongfully tore her signature from the deed and returned the deed to her attorney with the check. Plaintiff prayed that the defendant be directed to perform specifically by execution of a quitclaim deed "free and clear of all encumbrances or liens (other than the taxes and said suit)"; that defendant's husband, also joined in the suit, be directed to join in the execution of that deed as waiver of inchoate dower; and for other general relief.

The next pleading was defendant's motion to dismiss the suit, predicated primarily upon the contentions that defendant's husband was not bound by the transaction and that the agreement was unenforceable by reason of the Statute of Frauds. The court sustained the motion as to defendant's husband, but denied it as to the defendant.

By her answer, the defendant denied that the attorney in question was acting as a trustee; admitted that the attorney had delivered to her a check for $200, but denied that she had agreed to accept the check in full payment for the real estate, and denied that she had in fact accepted the check. Rather, she alleged, the attorney delivered the check to her home, but that she voided the check by striking out portions thereof and returning it to the attorney for re-delivery to the plaintiff; and she further alleged that she had never delivered "to plaintiff or to any agent or attorney for plaintiff" any deed excuted by her. She fur-

ther denied that the plaintiff ever had possession of a deed executed by her.

The defendant admitted that she tore her signature from the alleged deed of conveyance and returned the deed in that condition to the attorney together with the check, and she further averred that neither the attorney nor any other person ever had possession of the deed during the time it bore her signature. The answer further pleaded the Statute of Frauds in bar of the plaintiff's action and prayed for dismissal of the suit.

The plaintiff replied, stating that the deed was duly executed by the defendant and delivered to the attorney for delivery by him to the plaintiff, and that at that time a check for $200 was delivered to and accepted by the defendant. Plaintiff further replied that after the delivery of the deed from defendant to the attorney, the attorney, without authorization, gave temporary custody of the deed to the defendant, for the sole purpose of obtaining her husband's signature in waiver of dower, and that the defendant verbally undertook to obtain such signature promptly and to return the deed. The reply avers, however, that the signature of the defendant's husband was and is unnecessary. By his reply, plaintiff further alleged that at the time of the alleged verbal agreement for sale, the defendant authorized the plaintiff to intervene in a suit then pending for strict foreclosure of a mortgage on the property, and that pursuant thereto the plaintiff's former attorney had expended considerable effort in that suit.. In pursuance of this agreement, the reply alleges, the deed prepared for defendant's signature contained an express power of attorney authorizing such legal proceedings by the grantee as may be necessary to preserve the interest conveyed by the deed.

A copy of the deed is appended to the reply. The sole grantor therein designated is the defendant; her husband is not named. The instrument is an ordinary quitclaim deed,

the sole unusual provision being the power of attorney hereinabove referred to.

The next step in the proceedings was the taking of the discovery deposition of the attorney who delivered the deed. Pursuant to *subpoena,* he produced the original deed with the signature line torn out, and stated that he did not know who performed the mutilation. He stated that he had obtained the deed from the plaintiff and showed it to the defendant, who examined and signed it. At the time she signed the deed, the attorney gave the defendant a check for $200 and directed her to mail the deed to his office when her husband had signed it. He further stated that he had not represented the defendant as her attorney—"I acted purely as a relative without compensation." The attorney further testified that at the time the deed was signed, he told the defendant that the mortgage on the property had been foreclosed and that within a few days a deed would issue extinguishing the defendant's interest.

Defendant thereupon moved for summary judgment, appending to the motion her own affidavit and referring to the deposition of the attorney. The averments of the defendant's affidavit were these: The attorney, her brother-in-law, came to her home with his wife. The defendant was home alone. The attorney placed the check on the coffee table and handed her the quitclaim deed in question. At his request, she signed the deed, but did not return it to him. He left the deed and check with her. (The purpose of his so doing is not stated in the affidavit.)

Several days later, defendant averred, she placed both the check and the deed in an envelope and mailed it to the attorney. Before doing so, she tore the signature from the deed and cancelled the check by drawing lines through her name as payee. The check was not endorsed. At no time, she averred, had she delivered the deed to anyone, nor had she executed any contract to convey the real estate to the plaintiff.

Defendant's discovery deposition was thereupon taken during the pendency of her motion for summary decree. The following is a summary of her testimony: The lawyer had left the quitclaim deed on the coffee table in her home. "I guess" it was left solely for obtaining her husband's signature releasing dower. Previously, she had talked to plaintiff's former attorney, Mr. Hamilton, by telephone. Hamilton, she testified, told her that her mortgagee was trying to get some land that she owned. He mentioned delinquent taxes, and she told him that she was perfectly willing to pay them, but he told her that there would be legal intricacies involved. He offered $100, which she refused. He then offered her $200, "but I told him it was very valuable property and I was willing to pay the taxes on it." At no time, defendant testified, did she agree to accept any money from Hamilton.

The defendant testified that she had not paid the real-estate taxes "for many years;" pressed, she stated that she had inherited the property and had spent nothing relative thereto in all the years that she had owned it.

She averred that her brother-in-law had come to her home at her request; that she paid him no fees, but that over the years her husband, a physician, had provided the attorney with medical assistance. The attorney, by her testimony, "went into great detail about how terrifying it would be" to go to court in connection with the mortgage foreclosure; that it might require as many as six court appearances and that most likely she would lose.

A few days later, she testified, the attorney returned to her home with his wife. Her husband was absent. He asked her to sign the deed, and she told him that she had three times refused Hamilton and saw no reason to sign it— "However, I ended up signing it." When the attorney left, he asked her to have her husband sign the deed, but she did not answer.

That evening she mutilated her signature and some days

later telephoned the attorney and told him she was not going to go through with it. "He said, 'Oh, yes you are.' I said, 'No, I am not.' He said, 'I have got your signature.' And I said, 'Oh no, you haven't,'" Without endorsing the check, she returned it with the deed at the attorney's request and enclosed a note saying, "Sorry it was not more interesting."

Both the deposition of the plaintiff and that of the attorney were duly filed in the proceedings pursuant to notice.

Prior to ruling on defendant's motion for summary decree, the plaintiff filed a similar motion. Appended were the affidavits of the plaintiff and of Hamilton. Hamilton's affidavit stated that he had formerly acted as attorney for the plaintiff; that he spoke with defendant on plaintiff's behalf and she asked him to speak with her brother-in-law. This he did, and defendant's attorney thereupon in affiant's presence spoke with defendant explaining the imminence of the loss of the property through foreclosure. Thereupon, he averred, defendant agreed to sell the property to the plaintiff for $200, provided that all necessary legal proceedings be had at plaintiff's expense. At the same time, defendant authorized the plaintiff to intervene in her name, but for plaintiff's benefit, in the mortgage foreclosure, and in pursuance thereof Hamilton expended considerable time in briefing, preparation and court appearances. Defendant, he averred, had theretofore suffered the extinction of her interests in other real estate in the general area of the premises in question. His affidavit further alleged that the power of attorney set forth within the deed was prepared in pursuance of the agreement that plaintiff might intervene in the foreclosure, and that the defendant knew that legal proceedings had been taken by the plaintiff in defense of the foreclosure. The affidavit further stated that he had advised defendant's brother-in-law, who was acting for affiant and plaintiff, that only the signature of the defendant was

required on the deed, and that defendant's brother-in-law acted without authority in leaving the deed with the defendant for the purpose of obtaining her husband's signature.

Also appended to the motion was the affidavit of the plaintiff who stated simply that he had employed Hamilton as his attorney relative to the transaction in question and that he never authorized or directed defendant's brother-in-law to obtain the signature of defendant's husband on the deed; that defendant's brother-in-law had the sole duty to obtain her signature, deliver the check to her, and return the deed to the plaintiff.

On consideration of the respective motions, the court entered a decree denying the defendant's motion and granting the motion of the plaintiff. The court found that since the transaction in question, the plaintiff had been vested with title to the premises, and for the purpose of confirming such title the court ordered that the defendant execute a deed to the plaintiff, failing which a master in chancery was authorized to execute such deed in defendant's stead. The plaintiff was ordered to deposit $200 with the clerk, to be paid to the defendant if she should execute the deed, but not to be paid otherwise, irrespective of whether the deed should be executed by the master. On the same day, the plaintiff deposited the sum required by the decree. Defendant thereupon appealed.

Before proceeding further, we should like to comment that the trial court's procedural handling of this case was correct beyond technical argument. Rule 15 of this court expressly provides that discovery depositions may be considered in passing upon motions for summary judgment, provided such deposition be signed or signature thereon waived by agreement, provided same be filed pursuant to notice, and provided that the deposition complies with the substantive requirements of Rule 15.

For many years we have held that the entry of summary judgment or decree is proper only where the issues

involved are simple in nature and the legal consequences of those facts conclusive. (*Ward* v. *Sampson,* 391 Ill. 585.) These decisions, however, were handed down under the provisions of a practice statute which then severely limited the classes of cases in which summary disposition could be made. The statute has since been amended to provide for the entry of summary judgment or decree in any proper case. (Ill. Rev. Stat. 1957, chap. 110, par. 57.) We regard this as a salutory development. Summary judgment procedure is an important tool in the administration of justice. Its use in a proper case, wherein is presented no genuine issue as to any material fact, is to be encouraged. The benefits of summary judgment in a proper case inure not only to the litigants, in the saving of time and expenses, but to the community in avoiding congestion of trial calendars and the expenses of unnecessary trials.

In the instant case both parties moved for summary judgment and thereby the court was invited to decide the issues by reference to its file. It is clear that all material facts were before the court; the issues were defined; and the parties were agreed that only a question of law was involved. In this view, the parties were correct and the entry of summary decree for one or the other was proper. *Reconstruction Finance Corp.* v. *Lucius,* 320 Ill. App. 57.

The court properly treated each party's motion as being not only an application for summary decree, but a reply to the motion of his adversary. This was the proper interpretation under the circumstances. On the facts of this case, the affidavits of each party were presented not only in support of his own motion, but as a counteraffidavit opposing the motion of his adversary. Each party thereby admitted the sufficiency of his opponent's motion and supporting affidavit. *Grant* v. *Reilly,* 346 Ill. App. 399.

Emerging from the pleadings, affidavits and depositions we find there is this factual picture which is essentially uncontradicted—defendant had inherited some property on

which she had paid no taxes. In the superior court of Cook County was pending a proceeding entitled *Genow* v. *Meyer*, No. 56 S 3779, in which her interest in the involved premises was being extinguished, there having been entered a decree of strict foreclosure. Edwin Hamilton, a lawyer acting on behalf of plaintiff on June 11, 1956, interviewed the defendant with respect to her conveying her interest to plaintiff for a consideration of $200. Hamilton requested defendant to advise with her brother-in-law, Frank T. Sujack, a lawyer, concerning the transaction. Sujack explained to defendant the precarious status of her property; that there was a strong likelihood that she would lose it as a result of the strict foreclosure decree that already had been entered; that only desperate efforts would prevent such a decree reaching finality. Whereupon defendant agreed to quitclaim her interest in the property to plaintiff for $200 and it was further agreed, after a full explanation of its purpose, that the conveyance would contain this provision: "And I, the said grantor, hereby make, constitute and appoint the above grantee my true and lawful attorney irrevocably, with full power of substitution and revocation, in my name or otherwise, but at grantee's own costs and expenses to take all lawful actions, suits and proceedings and to make all necessary defenses to preserve the interests conveyed by this deed as I might or could do if this conveyance had not been made, hereby ratifying and confirming all that said grantee, his attorney or substitute, shall lawfully do or cause to be done by virtue hereof."

Pursuant to this agreement a deed was prepared by plaintiff containing the above "power of attorney" and handed to Sujack who showed the instrument to defendant, who examined and signed it and accepted plaintiff's check for $200. Then Sujack instructed his sister-in-law to keep the deed and have her husband sign his name, thus releasing his dower rights. The defendant subsequently changed her mind, tore her name from the deed and re-

turned the check. Sujack testified "I did not represent Mrs. Meyer as her attorney. I acted purely as a relative without compensation." Plaintiff involved himself in work and expense in pursuance of and in reliance on the contract he had made with defendant. There is on deposit with the clerk of the superior court of Cook County $200, the consideration for the conveyance.

It is contended by plaintiff, and the trial court so held, that there was a delivery of the executed deed; that Sujack was not authorized to surrender custody of the instrument for the purpose of having defendant's husband sign the same; that in returning the deed to Mrs. Meyer he was gratuitously and independently acting beyond the scope of his employment.

A careful reading of the depositions and affidavits filed in this case leaves some doubt in our mind as to the propriety of the chancellor's determination that there was a delivery of the deed in question. However, we do concur in the result reached in granting plaintiff the relief prayed. Specific performance of an oral contract to sell real estate is appropriate here on the record in this case, although the complaint and briefs consider this theory of recovery in only an incidental fashion. (*Pope* v. *Speiser,* 7 Ill.2d 231.) We think it is fair to say that the proof indicates beyond question that the defendant entered into an oral agreement to sell the premises involved herein to plaintiff for a consideration of $200. Does the Statute of Frauds preclude the enforcement of such an oral agreement? In 100 A.L.R. 199, beginning at page 201, can be found a complete analysis of this problem: "Perhaps in cases holding that a deed, though undelivered, is a sufficient memorandum to take an oral contract for the sale of land out of the Statute of Frauds, it is assumed that the provisions of the deed sufficiently state the terms of the contract. The better view would appear to be that if the deed embodies the substance of the oral contract, the mere fact that it is undelivered

will not prevent its serving as a memorandum thereof within the Statute of Frauds, although a deed which is in form a mere conveyance of land, without referring to or embodying the substance of the oral agreement, is insufficient to take the contract out of the Statute of Frauds." (*Work v. Cowhick*, 81 Ill. 317.) We have before us a deed containing the names of the parties, a description of the land and a power of attorney, also a check for $200, accepted by defendant, which represented the consideration. The essential elements of the oral contract appear in the deed and check and constitute such a memorandum as renders the defense of the Statute of Frauds inapplicable. Having reached this conclusion we find it unnecessary to consider the cases cited in appellee's brief supporting the argument that defendant should be estopped from asserting the Statute of Frauds as a defense.

The decree entered herein is affirmed.

*Decree affirmed.*