# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Rodriguez v. Frankie's Beef/Pasta & Catering*, 2012 IL App (1st) 113155**

---

| | |
|---|---|
| Appellate Court Caption | ALMA GUTIERREZ RODRIGUEZ, Special Administrator of the Estate of Jose Rodriguez, Plaintiff-Appellant, v. FRANKIE'S BEEF/PASTA AND CATERING, a Corporation, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-11-3155 |
| Filed | August 14, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The exclusive remedy provision of the Workers' Compensation Act barred plaintiff's action alleging that the employer of plaintiff's decedent was negligent in hiring and retaining the employee who shot decedent in an altercation over job assignments. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-L-009546; the Hon. Jeffrey Lawrence, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Radtke & Nusbaum, of Chicago (Carl Nusbaum and Michael J. Radtke, of counsel), for appellant.

Law Offices of Craig F. Miller, of Oak Lawn (Craig F. Miller, of counsel), for appellee.

Panel

JUSTICE HARRIS delivered the judgment of the court, with opinion.

Presiding Justice Quinn and Justice Cunningham concurred in the judgment and opinion.


**OPINION**

¶ 1     Plaintiff, Alma Gutierrez Rodriguez, appeals the order of the circuit court granting defendant Frankie's Beef/Pasta & Catering's (Frankie's) motion for summary judgment on plaintiff's negligence claim. On appeal, plaintiff contends (1) the exclusive remedy provision of the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2006)) does not apply in a claim where the employer negligently hired and retained an employee; and (2) genuine issues of material fact exists as to whether the injury arose out of employment, precluding summary judgment. For the following reasons, we affirm.

¶ 2                                          JURISDICTION

¶ 3     The trial court granted summary judgment on September 22, 2011. Plaintiff filed a notice of appeal on October 21, 2011. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4                                          BACKGROUND

¶ 5     Plaintiff filed an amended complaint alleging negligence against defendant for retaining Edan Maya as an employee. Plaintiff's claim arose from an altercation between Edan Maya and plaintiff's decedent, Jose Rodriguez, in which Maya shot and killed Rodriguez. The record contains the affidavit of Vincent Santoro, the president and owner of Frankie's. In his affidavit, Santoro stated that on September 15, 2005, he observed an altercation between employees Carlos Flores, Rodriguez, and Maya. Santoro testified that he only observed an argument and personally did not see the parties engaged in a physical confrontation. He told the parties, "listen, I need you guys to work together here." Santoro dismissed Maya "and asked him to leave the premises." In his deposition, Santoro stated that he told Edan to "go home for the day" so he could "cool off." He explained that if Edan had stayed, "they would have kept on going all day. You know how these kids are. They get aggravated and then they

kept going all day. *** I didn't want things to get worse, okay?" He informed Edan's brother, David, that Edan could return to work as scheduled at 11 a.m. the following day.

¶ 6      Santoro later learned that the altercation arose from the fact that he had given Flores the position of fry cook after Maya left for a two-month stay in Mexico. Santoro further stated that prior to the altercation he did not know tension existed between Rodriguez and Maya over the fry cook position. After speaking with other employees, Santoro decided to terminate Maya on September 16, 2005. However, he was unable to inform Maya of the termination before the shooting.

¶ 7      Santoro was interviewed by Officer David Seaquist. In the report, he told Seaquist that on the morning of September 16, 2005, he arrived at Frankie's and went into his office to complete paperwork. Several employees, including decedent Rodriguez, were already present to prepare Frankie's for opening. Santoro heard what he believed were fireworks inside the store and he left his office to investigate. He saw Edan Maya leaving the store with a gun in his right hand. Edan looked directly at him before running away. Santoro also saw Flores and Rodriguez bleeding and lying on the floor. He called 911. Santoro stated that Edan Maya was "let go" the day before for not getting along with other employees.

¶ 8      Robyn Veres stated in an affidavit that she was an employee of Frankie's at the time of the shooting. She was aware of an altercation between Flores, Rodriguez, and Maya that occurred on September 15, 2005. She also stated that she "was told the parties were arguing about something employment related as to the position of fry cook." She "personally never knew of this tension between the parties and never witnessed any prior altercations *** nor did [she] make Mr. Vincent Santoro aware of any problems" between Flores, Rodriguez, and Maya.

¶ 9      In a police report, Veres told Officer Seaquist that Edan Maya had taken some time off to go to his father's funeral in Mexico and that Maya had returned about four months ago. On September 16, 2005, she arrived for work. Other employees were also present, including Rodriguez and David Maya. At approximately 10:10 a.m., she heard two "booms" and looked on the video monitors. She saw Edan Maya running out the back door holding a small pistol in his right hand. She also saw Rodriguez collapse to the floor. She stated that on September 15, 2005, Edan Maya and Flores were involved in an altercation that "resulted in Maya being terminated."

¶ 10      David Seaquist stated in an affidavit that on September 16, 2005, he was an officer assigned to investigate a double homicide at Frankie's. In his investigation, he interviewed employee David Maya and generated a police report based on the interview. He further stated that the statements in the report reflect "a true and accurate account of the Interview." David Maya was the half-brother of Edan Maya. David informed Officer Seaquist that Rodriguez was "making fun of" Edan and told him that Flores was a better fry cook. David told Seaquist that Rodriguez "kept egging [Edan] Maya to fight [Flores] for taking his position." He stated that no one at Frankie's liked Edan. David said that Edan had left Frankie's for two months because his father had passed away, and while he was gone, Flores had taken over the position of fry cook. He further informed Seaquist that he had never before seen Edan with a gun.

¶ 11      Defendant filed a motion for summary judgment arguing that plaintiff's claim is barred by section 5(a) of the Act, which provides an exclusive remedy for injuries arising from the course of employment. The trial court granted the motion on September 22, 2011. Plaintiff filed this timely appeal.

¶ 12                                            ANALYSIS

¶ 13      Summary judgment is proper where the pleadings, depositions, and admissions on file, along with any affidavits, show no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *A.B.A.T.E. of Illinois, Inc. v. Quinn*, 2011 IL 110611, ¶ 22. We review the trial court's grant of summary judgment *de novo. Millenium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 309 (2010).

¶ 14      In support of its motion for summary judgment, defendant attached the affidavits of Santoro, Officer Seaquist, and Veres, as well as police reports prepared by Seaquist summarizing his interviews with witnesses. Generally, statements contained in police reports are considered inadmissible hearsay. *People v. Shinohara*, 375 Ill. App. 3d 85, 113 (2007). Evidence not admissible at trial cannot be used to support or oppose a motion for summary judgment. *Complete Conference Coordinators, Inc. v. Kumon North America, Inc.*, 394 Ill. App. 3d 105, 108 (2009). However, no objection was made to the admission of the police reports. Hearsay evidence admitted without objection is considered and given its natural probative effect. *People v. Akis*, 63 Ill. 2d 296, 299 (1976).

¶ 15      Plaintiff first contends that the trial court erred in granting summary judgment on the basis that the Act provides an exclusive remedy for Rodriguez's injury. Section 5(a) of the Act states:

"(a) No common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, *** or any one otherwise entitled to recover damages for such injury." 820 ILCS 305/5(a) (West 2006).

Section 11 of the Act states:

"The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer *** for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act ***." 820 ILCS 305/11 (West 2006).

¶ 16      In *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462 (1990), our supreme court observed that the purpose of the Act is "to provide financial protections to workers for accidental injuries arising out of and in the course of employment," and in return for imposing liability without fault on the employer, the Act "prohibits common law suits by employees against the employer." It reasoned that "[t]he exclusive remedy provision 'is part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance.' [Citation.]" *Id*. Accordingly, the Act prohibits employees from bringing a common law cause of action against an employer unless the employee can show that the injury (1) was not accidental; (2) did not arise from his employment; (3) was not

received in the course of his employment; or (4) was not compensable under the Act. *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 237 (1980). The parties do not dispute that Rodriguez received his injuries in the course of his employment at Frankie's. We therefore determine whether plaintiff has proved any of the remaining factors.

¶ 17      In *Meerbrey*, our supreme court defined "accidental" as a term that describes " 'anything that happens without design or an event which is unforseen by the person to whom it happens.' " (Internal quotation marks omitted.) *Meerbrey*, 139 Ill. 2d at 463 (quoting *Pathfinder Co. v. Industrial Comm'n*, 62 Ill. 2d 556, 563 (1976)). Thus, an "accidental" injury in the employment context includes "injuries inflicted intentionally upon an employee by a co-employee *** since such injuries are unexpected and unforeseeable from the injured employee's point of view. [Citation.] Such injuries are also accidental from the employer's point of view, at least where the employer did not direct or expressly authorize the co-employee to commit the assault." *Id.* See also *Richardson v. County of Cook*, 250 Ill. App. 3d 544, 549 (1993) (claim based on intentional torts committed by co-employees barred by the exclusivity provision of the Act because the injuries were unexpected and unforseen by the plaintiff and not authorized by the employer).

¶ 18      In the case at bar, plaintiff's decedent Rodriguez had an altercation with Edan Maya on the day before the shooting. The next day, Maya returned to Frankie's while Rodriguez was working and shot him. There is no reason to believe that Rodriguez expected the shooting to occur; in fact, he reported for work the day after the altercation. Nor is there any indication that Santoro directed or expressly authorized Maya's actions. Instead, Santoro stated that he was unaware of any tensions between the parties before the altercation. Since Rodriguez's injury is considered "accidental" under the Act, plaintiff's sole remedy against defendant is under the Act.

¶ 19      Plaintiff disagrees, arguing that the element of forseeability in determining whether an injury is accidental should be a consideration from the employer's perspective as well. She contends the shooting was not accidental because on the day of the altercation Santoro believed that Edan Maya posed a threat of serious harm to others. Santoro sent Maya home to "cool off" and planned to terminate his employment the following day. Plaintiff contends that Santoro had a duty to protect Rodriguez from imminent harm, and it cannot be Illinois policy that the Act negates this duty.

¶ 20      First, there is no indication that Santoro believed Edan Maya posed a serious threat of harm to others. Immediately after the altercation, Santoro sent Maya home to cool off but thought he would return the following day to report for work. The most important consideration for Santoro was for his employees to get along so they could work together. Also, plaintiff cites no cases to support her position. The cases plaintiff does cite, *Petersen v. U.S. Reduction Co.*, 267 Ill. App. 3d 775 (1994), *MacDonald v. Hinton*, 361 Ill. App. 3d 378 (2005), *Johnson v. Mers*, 279 Ill. App. 3d 372 (1996), and *Carter v. Skokie Valley Detective Agency, Ltd.*, 256 Ill. App. 3d 77 (1993), do not involve the Worker's Compensation Act. Illinois law is clear that unless an employer has committed or expressly authorized a co-employee to commit an intentional tort against an employee, the Act prohibits common law actions seeking damages for such torts. See *Collier*, 81 Ill. 2d at 239; *Meerbrey*, 139 Ill. 2d at 466; *Richardson*, 250 Ill. App. 3d at 548. Since plaintiff cannot

recover common law damages against defendant for the shooting by Maya, it follows that she cannot bring a claim against defendant for negligently hiring/retaining Maya based on the shooting. We decline plaintiff's invitation to create a new exception to the Act's exclusivity provision.

¶ 21    Plaintiff also contends that a question of fact exists as to whether the altercation leading to the shooting arose out of employment or was a purely personal dispute. In the Act, the phrase "arising out of the employment" refers to the causal connection between employment and the injury suffered. (Internal quotation marks omitted.) *Martinez v. Gutmann Leather, LLC*, 372 Ill. App. 3d 99, 101 (2007). An injury arises from employment when a causal connection exists between working conditions and the resulting injury. *Castaneda v. Industrial Comm'n*, 97 Ill. 2d 338, 342 (1983). It must be apparent that employment increased the risk of injury, and that the employee would not have been subject to the same attack if he had encountered the offender for the first time upon the street. *Huddleston v. Industrial Comm'n*, 27 Ill. 2d 446, 448 (1963).

¶ 22    All of the witnesses testified that the altercation at Frankie's between Rodriguez and Edan Maya involved Flores taking over the position of fry cook from Maya and taunts that Flores was the better fry cook. If Rodriguez had not been employed at Frankie's, it is unlikely he would have been involved in the altercation with Maya or subsequently shot by Maya. Plaintiff contends that the dispute was purely personal because David Maya told Officer Seaquist that no one at Frankie's liked Edan. However, a purely personal dispute is one where the verbal exchange is "completely unrelated to the employer's work." *Castaneda*, 97 Ill. 2d at 342. David Maya consistently stated that the altercation involved who was the better fry cook and that Rodriguez "kept egging [Edan] Maya to fight [Flores] for taking his position." Nothing contained in the record indicates the altercation resulted from anything other than the fry cook dispute.

¶ 23    Plaintiff also argues that Rodriguez's injuries were not compensable under the Act because he was the aggressor in the altercation. "[W]here the party seeking compensation was the aggressor, the party's acts are not within the scope of employment and are not compensable." *Franklin v. Industrial Comm'n*, 341 Ill. App. 3d 128, 135 (2003). This particular issue was not brought before the trial court below and thus plaintiff has waived this claim upon review. *Meerbrey*, 139 Ill. 2d at 467. Nonetheless, the law generally defines " 'initial aggressor' " in the context of the Act as "the employee who makes the first physical contact." *Franklin*, 341 Ill. App. 3d at 135. Although it is arguable whether Rodriguez started the taunts, no one stated that he observed the parties exchange physical blows prior to the shooting. Therefore this exception does not apply and the trial court properly granted summary judgment in favor of defendant.

¶ 24    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 25    Affirmed.