2023 IL App (1st) 220742

SECOND DIVISION
August 8, 2023

No. 1-22-0742

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DOREEN M. PRICE, Individually and as Independent Administrator of the Estate of John F. Price, Deceased, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| LUNAN ROBERTS, INC., an Illinois Corporation and d/b/a Arby's Restaurant;  LUNAN CORPORATION, an Illinois Corporation and d/b/a Arby's Restaurant; ARBY'S RESTAURANT GROUP, INC.; and IRVIN R. THOMAS, | ) ) ) ) ) ) | No. 18 L 7963 |
| Defendants | ) ) ) | |
| (Lunan Roberts, Inc., and Lunan Corporation, Defendants-Appellees). | ) ) | Honorable Melissa A. Durkin, Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court, with opinion.
Justices Ellis and Cobbs in the judgment and opinion.

OPINION

¶ 1    Plaintiff filed a complaint seeking damages for the death of a decedent who was murdered by a coworker. This case concerns the applicability of the Workers' Compensation

Act's (820 ILCS 305/1 *et seq.* (West 2020)) exclusive remedy provision to plaintiff's claim.

Plaintiff appeals under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), after the circuit

court granted summary judgment to defendants Lunan Roberts, Inc., and Lunan Corporation

(collectively, Lunan defendants), finding that plaintiff's exclusive remedy for the injury in this

case was under the Workers' Compensation Act. The trial court thus found that the Lunan

defendants were entitled to judgment as a matter of law on the common-law causes of action

plaintiff asserts here. Plaintiff argues on appeal that the trial court improperly granted summary

judgment in the Lunan defendants' favor because a genuine issue of material fact exists about the

applicability of the Workers' Compensation Act's exclusive remedy provision to her claims. For

the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3      On September 20, 2017, plaintiff's decedent, John Price (Price), was working the night

shift at an Arby's restaurant in Hickory Hills, Illinois. The Arby's restaurant is owned and

operated by defendants Lunan Roberts, Inc., and Lunan Corporation. While Price was taking

orders over the intercom system, his coworker, Irvin Thomas, was preparing the food orders.

Because they were working the late shift, Price and Thomas were the only two employees on

duty, as the dining room was closed and only the drive-thru was open. Price clocked in for his

shift at 9:57 pm. Thomas clocked in at 10:02 pm.

¶ 4      Surveillance video shows the two men working in the restaurant. Two minutes after

Thomas clocked in for his shift, at 10:04 pm, Price can be seen gesturing towards Thomas.

Thomas was in the process of putting a bun in an oven. The surveillance video does not include

any audio. After Price gestures toward Thomas, Thomas walks away from where he was

preparing food and exits the frame of the surveillance camera. Thomas returns into view of the

camera carrying a large kitchen knife. Thomas proceeds to grab Price and stab him several times. Price briefly escapes from Thomas's grasp and tries to get away from him. Thomas is able to catch up to Price a few feet away and stab him again. Price is finally able to get away, and he exits the back door of the restaurant. Thomas exits through the same door shortly thereafter and flees the scene. Price died as a result of his injuries, having suffered 27 separate stab wounds. Thomas was arrested and was later charged with murder.

¶ 5 Plaintiff Doreen Price, Price's mother, filed this suit against the Lunan defendants (the owners and operators of the Arby's restaurant where her son was killed), along with the Arby's Restaurant Group, Inc., and Thomas. She alleges that the Lunan defendants are liable for her son's death for negligent hiring, retention, and supervision of their employees, among other things.

¶ 6 The record reveals that in 2016, a year prior to the stabbing in this case, Thomas threatened two of his elderly relatives with a nine-inch kitchen knife. Thomas also verbally threatened to kill the relatives on that occasion if they did not follow his commands. He was convicted of assault and unlawful use of a knife. Thomas's relatives secured an order of protection against him after that incident.

¶ 7 Thomas and Price had worked together on the night shift for about 14 months. Their supervisor, Joanne Bizub, testified in a deposition that, on one occasion, she arrived for her shift and Price informed her that Thomas was not speaking to him. She arranged a sit-down meeting with the two men. Bizub was unable to determine why Thomas was giving Price the silent treatment. The dispute was settled to Bizub's satisfaction, and she testified the issue was resolved at that point. Thomas and Price continued working together after that issue and were "fine," according to Bizub. Bizub was not aware of any other incidents between Price and Thomas.

¶ 8     John Doniek, the district manager for Lunan Corporation, testified in a deposition that he knew about an incident where Thomas had shoved a garbage can into Price. Doniek testified that Thomas's conduct was a serious violation of employee rules. Doniek did not state whether he knew the reason for the assault, but he testified that the matter was handled and had been resolved.

¶ 9     The Lunan defendants filed a motion to dismiss the case and later filed a motion for summary judgment. The Lunan defendants argued in both their motions that they are not liable because plaintiff's exclusive remedy for this matter is under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2020)). The trial court denied the motion to dismiss in order to allow plaintiff to take discovery on facts that might relate to whether the exclusive remedy provision of the Workers' Compensation Act would bar plaintiff's claims. Following discovery and on the Lunan defendants' motion, the trial court granted summary judgment in the Lunan defendants' favor.

¶ 10    The Workers' Compensation Act generally serves as the exclusive remedy for a person who is injured during the course of employment. However, when the injury to an employee results from a personal conflict between employees unrelated to their work, the Workers' Compensation Act may not bar a civil suit by the employee seeking redress for the injury. See *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463 (1990).

¶ 11    In order to avoid summary judgment, plaintiff attempted to show that there was a question of material fact regarding whether the dispute was of a personal nature. During the course of the criminal case against Thomas, no motive was conclusively established.

¶ 12    Joanne Bizub testified during her deposition that Price and Thomas frequently discussed video games during their shift. She knew that Price gave Thomas rides home from work on

occasion. Bizub also knew that at some point during the time Price and Thomas worked on the same shift together Price gave Thomas a portable videogame console, a PSP.

¶ 13    A forensic examination of Price's phone following the murder revealed text messages with an unknown person that included a reference to Thomas.[1] The text messages appear to indicate drug transactions between Price and the unknown person, and the messages indicate that the unknown person may be involved in similar transactions with Thomas. The majority of the messages provided were sent between Price and the unknown person five days before the murder. The messages discuss arranging meetings and terms for an exchange such as "80" for "a quarter." The unknown person expresses a familiarity with both Price and Thomas and indicates knowledge of the fact that the men worked at Arby's.

¶ 14    When Thomas was interviewed by police following the murder, the police asked him what happened, and he responded "sometimes I just get like that." Thomas told the police that he believed he was "ill, sick in the head." Thomas went on to explain that there was an issue between him and Price and "it was building up to it." Thomas later indicated that Price "knows what he did and needed to be dealt with." Thomas stated that Price "tried to do something to me and started yelling at me." Thomas continued by explaining that Price "came and did this before…acting like he was going to do something to somebody. I just got tired of it" "and I'm tired of him, I'm just tired of him." Thomas stated that Price "just be yelling at [him], threatening people and shit."

¶ 15    Plaintiff argued in the trial court that there was evidence that the murder was the result of a purely personal dispute between Price and Thomas and, therefore, not barred by the Workers' Compensation Act. The trial court found that, "[e]ven if there is some evidence of a personal

_____

[1]The trial court ruled that it would not consider the text message evidence when ruling upon the motion for summary judgment because plaintiff failed to lay a foundation for the evidence to be admitted.

relationship between Price and Thomas outside of work, there is no competent evidence in the record that the attack was motivated by a purely personal dispute." The trial court held that plaintiff's sole remedy against the Lunan defendants is under the Workers' Compensation Act, and it entered a judgment of no liability in favor of the Lunan defendants. Plaintiff appeals. The case remains ongoing in the circuit court against some defendants, but the case is before us pursuant to a finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason for delaying enforcement or appeal of the order as it pertains to the Lunan defendants who secured a judgment of no liability.

¶ 16                                    ANALYSIS

¶ 17     Plaintiff appeals the circuit court's summary judgment ruling, arguing that the circuit court erred when it entered a judgment in favor of the Lunan defendants, finding plaintiff's recovery is barred by the Worker's Compensation Act. The Workers' Compensation Act establishes a system for paying compensation to workers who are accidentally injured or killed in the course of their employment. 820 ILCS 305/2, 5(a) (West 2020). An employee injured on the job normally cannot sue his employer or coworkers, provided that the employee is entitled to receive workers' compensation benefits from the employer or its insurer. *Ramsey v. Morrison*, 175 Ill. 2d 218, 224 (1997). The Workers' Compensation Act operates to make the benefits under the Act the exclusive remedy for an employee who is injured while acting in the course and scope of his employment. *Fregeau v. Gillespie*, 96 Ill. 2d 479, 484 (1983).

¶ 18     Under the Workers' Compensation Act, the phrase "arising out of the employment" refers to the causal connection between employment and the injury suffered. *Rodriguez v. Frankie's Beef/Pasta & Catering*, 2012 IL App (1st) 113155, ¶ 21. An injury arises from

employment when a causal connection exists between working conditions and the resulting injury. *Id.*

¶ 19    Fights between employees arising out of disputes concerning the employer's work are risks incidental to the employment, and resulting injuries are compensable under the Workers' Compensation Act, which bars recovery in civil suits against the employer. *Franklin v. Industrial Comm'n*, 211 Ill. 2d 272, 279-80 (2004). However, where a physical confrontation between two employees is purely personal in nature, the resulting injuries cannot be said to have arisen out of the employment. *Martinez v. Gutmann Leather, LLC*, 372 Ill. App. 3d 99, 102 (2007) (citing *Castaneda v. Industrial Comm'n*, 97 Ill. 2d 338, 342 (1983)). Thus, " '[e]ven though a fight occurs on the [employer's] premises, resulting injuries are not compensable [under the Workers' Compensation Act] if the underlying dispute is not connected with the work.' " *Id.* at 104 (quoting *Interstate United Corp. v. Industrial Comm'n*, 65 Ill. 2d 434, 436 (1976)).

¶ 20    Summary judgment is appropriate when the pleadings, depositions, admissions and affidavits, viewed in a light most favorable to the nonmovant, fail to establish that a genuine issue of material fact exists, thereby entitling the moving party to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2020); *Fox v. Seiden*, 2016 IL App (1st) 141984, ¶ 12. If disputes as to material facts exist or if reasonable minds may differ with respect to the inferences drawn from the evidence, summary judgment may not be granted. *Fox*, 2016 IL App (1st) 141984, ¶ 12. We review the trial court's decision to grant summary judgment *de novo*. *Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 132350, ¶ 8.

¶ 21    A defendant may move for a "Celotex-type" motion for summary judgment by pointing out to the court that there is an absence of evidence to support the nonmovant party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In that case, Celotex, the movant, could not

prove that its products were not the cause of the plaintiff's injuries. Celotex was nevertheless entitled to summary judgment because the plaintiff, who had the burden of proof, likewise could not produce any evidence that a Celotex product was involved. The court in *Celotex* held that the defendant satisfies its initial burden of production when it " 'point[s] out' the absence of evidence supporting the plaintiff's position." *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 355 (2000); *Celotex*, 477 U.S. at 325.

¶ 22    In moving for summary judgment here, the Lunan defendants provided evidence that Price was injured during the course of his employment and that his injury was otherwise compensable under the Workers' Compensation Act. At that point, the burden of production shifted to plaintiff to supply some evidence that her claims fell within an exception to the exclusive remedy provision of the Workers' Compensation Act. *Celotex*, 477 U.S. at 325; *Hutchcraft*, 312 Ill. App. 3d at 355. In order to avoid the exclusive remedy generally imposed by the Workers' Compensation Act, the burden was shifted to the plaintiff to present evidence that the injury did not arise out of employment. *Meerbrey*, 139 Ill. 2d at 463. The Lunan defendants argue plaintiff has not produced any evidence, besides speculation, that the fight between Price and Thomas was personal and not connected to the work.

¶ 23    Plaintiff argues that there was no ongoing work dispute between Price and Thomas at the time of the murder. Instead, she argues that there is significant evidence of a personal relationship between Price and Thomas that was outside of and independent of their work activities. To show the potential personal nature of the dispute, plaintiff points to the facts that (1) Price and Thomas spent time together outside of work when Price would drive Thomas home, (2) a mutual interest in videogames that included Price giving Thomas a portable game

console, and (3) some kind of transactions being conducted with another party as evidenced by the text message evidence.

¶ 24    Plaintiff posits that Price giving Thomas a game console worth hundreds of dollars indicates a relationship of some depth. Plaintiff opines that it is possible the game console was given to satisfy a debt, and she attempts to link the giving of the game console with the text messages that seem to indicate drug transactions occurring. Plaintiff contends that, if the parties' relationship included dealings with drugs, it is possible that the relationship could have gone sour and generated a motive for the murder. Plaintiff argues that such a scenario is a more plausible explanation for the violence exhibited than an argument over something from their employment, like a sandwich, would be.

¶ 25    While plaintiff's hypotheses have some appeal, she cannot point to any evidence in the record to support the theories. There is no evidence that Price gave Thomas the game console for satisfaction of a debt. There is, in fact, no evidence regarding the reason Price gave the console to Thomas. Any reasoning that plaintiff can offer about the significance or relevance of the game console is purely speculation. Speculation is insufficient to overcome a motion for summary judgment. *Kasper v. McGill Management Inc.*, 2019 IL App (1st) 181204, ¶ 23. Plaintiff opines that her theory about the motive is more plausible than the theories about the motive being work related. But an argument that one piece of speculation is more plausible than another piece of speculation cannot substitute to satisfy plaintiff's burden to supply some evidence to create a genuine issue of material fact. There are simply no facts in the record that the murder was the result of any personal dispute between Price and Thomas. To reach the conclusion plaintiff urges us to reach, we would have to engage in speculation that is not supported by record evidence.

¶ 26    Plaintiff herself testified that she did not know of any personal disputes between Thomas and her son. During the investigation into the murder, no concrete motive for Thomas's actions was ever revealed. Plaintiff conceded in her deposition that she did not know why Thomas killed her son. Likewise, on appeal, plaintiff concedes that the motive for the murder has never been discovered. She acknowledges that the murder "certainly could have been the result of repeated or constant or brewing disputes between Thomas and Price that arose exclusively from work." Bizub, their supervisor, had no knowledge of either a personal dispute or a work-related dispute between Thomas and Price. Bizub was surprised that the murder happened based on her experiences with the two men.

¶ 27    The fact that Price and Thomas had some degree of a personal relationship does not mean that the incident was caused by a purely personal dispute. The trial court correctly recognized that, "[e]ven if there is some evidence of a personal relationship between Price and Thomas outside of work, there is no competent evidence in the record that the attack was motivated by a purely personal dispute." Plaintiff lays out the evidence of Thomas and Price's personal relationship and speculates that the attack must have been based on something in that relationship rather than their fast-food work, but her conjecture is not backed by any record evidence and cannot serve to defeat the motion for summary judgment. See *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 132 (1992) ("unsupported conclusions, opinions, or speculation are insufficient to raise a genuine issue of material fact").

¶ 28    As for the text messages discussing apparent drug transactions, the text messages contained in the report plaintiff provided do not evidence any dispute between Price and Thomas. The messages are between Price and an unknown person, and they merely mention Thomas. The messages do not indicate any kind of transactional relationship between Price and

Thomas, nor do they shed any light on the possible reason for Thomas's actions. The same can be said about the police's search of Thomas's home in which the police recovered a small amount of cannabis and paraphernalia. None of these facts speak to a possible motive for the murder or a dispute between Price and Thomas, and plaintiff's attempt to reach such a conclusion requires several significant speculative jumps, which the court cannot make in reviewing a summary judgment ruling. Despite a criminal investigation and significant discovery in this case, no evidence of a personal dispute or a motive for the murder has been uncovered.

¶ 29    Plaintiff argues that "one of the deepest flaws in the Trial Court's judgment" is that "other than the mere fact that Thomas and Price were at Arby's when the attack occurred there is not a single shred of evidence in this record that a work-related dispute between them motivated Thomas's assault." Plaintiff's statement is accurate. However, the legal conclusion she draws from the statement is not. While there is no evidence that the dispute was work related, there is similarly no evidence that the dispute was personal, and plaintiff had the burden of producing evidence the dispute was personal. Plaintiff relies purely on speculation to try to create an issue of fact on the character of the dispute. Plaintiff does not point to any actual evidence of a personal dispute between Price and Thomas that existed at the time of the attack or served as motivation for the attack.

¶ 30    Here, plaintiff did not meet the burden that was shifted onto her because she failed to produce any evidence that the injury arose from a personal dispute. After a summary judgment movant meets the initial burden of proof and production, the nonmovant must present a factual basis that would arguably entitle her to a judgment in order to survive the motion. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002).

¶ 31     Plaintiff argues that the very nature of the attack belies the notion that the dispute was work related. Plaintiff points to the timing of the attack and its brutality. Thomas attacked Price at 10:04 pm, just two minutes after clocking in to work. Plaintiff suggests that the two minutes together was not enough time for a work-related dispute to erupt. She contends that it is reasonable to infer from the timing of the attack that the motivation came from something that occurred prior to their shift that day. Plaintiff also points out that Price suffered 27 stab wounds, which were so severe that he bled to death within minutes. Price was stabbed in the head, face, neck, thigh, and both his left and right shoulders and hands. Plaintiff contends that it is inconceivable to imagine what sort of work-related dispute between two fast food workers could lead to such sustained and vicious violence. Based on the circumstances, plaintiff argues it can be inferred that the violence was the result of something personal between the men.

¶ 32     Both parties discuss our decision in *Frankie's Beef/Pasta*, 2012 IL App (1st) 113155, and its application to this case. In *Frankie's*, an employee, Edan Maya, left work for several weeks to attend a funeral in Mexico. When Maya returned, he was informed that a coworker was receiving a promotion rather than him. The promotion became a source of tension between the two employees that later resulted in an altercation. The manager of the restaurant sent Maya home for the day to cool off. The next day, Maya returned to the restaurant and shot and killed the employee with whom he had an altercation the day before. The deceased employee's special administrator filed suit against the restaurant for negligent hiring and retention of its employees. The circuit court granted summary judgment in favor of the restaurant, and the plaintiff appealed. We affirmed.

¶ 33     In *Frankie's*, we explained that the dispute arose out of employment because "[a]ll of the witnesses testified that the altercation at Frankie's between [the decedent] and Edan Maya

involved [the decedent] taking over the position of fry cook from Maya and taunts that [the decedent] was the better fry cook." *Id.* ¶ 22. We explained that, if the decedent had not been employed at Frankie's, it is unlikely he would have been involved in the altercation with Maya or subsequently shot by Maya. *Id.* We explained that "a purely personal dispute" is one where the conflict is " 'completely unrelated to the employer's work.' " *Id.* (quoting *Castaneda*, 97 Ill. 2d at 342). In *Frankie's*, nothing in the record indicated that the altercation resulted from anything other than the dispute over the decedent's promotion—a work-related motive covered by the Workers' Compensation Act. *Id.*

¶ 34    *Frankie's* is helpful to the issues in this case but also not directly in line with the situation presented here. In *Frankie's*, there was clear evidence that there was a work-related dispute that motivated the shooting. *Id.* In this case, there is no clear evidence that a work-related dispute motivated the shooting; however, there is similarly no evidence that a personal dispute motivated the shooting. Similar to *Frankie's* though, the plaintiff here supplied no evidence that the dispute was unrelated to the employer's work and, at trial, would invite a factfinder to speculate on the nature of the dispute. Therefore, the trial court correctly granted judgment in the Lunan defendants' favor.

¶ 35                                  CONCLUSION

¶ 36    Accordingly, we affirm.

¶ 37    Affirmed.

---

*Price v. Lunan Roberts, Inc.*, **2023 IL App (1st) 220742**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-L-7963; the Hon. Melissa A. Durkin, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Coogan, of Coogan Gallagher, of Park Ridge, for appellant. |
| **Attorneys for Appellee:** | David S. Osborne and Philip G. Brandt, of Lindsay, Pickett & Postel, LLC, of Chicago, for appellees. |