2025 IL App (3d) 240482

Opinion filed October 8, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| KAMIL KORDAS, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| BOB'S ALL BRIGHT ELECTRIC, INC., | ) | Appeal No. 3-24-0482 |
| an Illinois corporation, and THOMAS | ) | Circuit No. 21-L-1065 |
| CLARIZIO, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Bob's All Bright Electric, Inc., | ) | Honorable |
| | ) | David E. Schwartz, |
| Defendant-Appellee.) | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court, with opinion.
Justice Bertani concurred in the judgment and opinion.
Justice Anderson dissented, with opinion.

_____

**OPINION**

¶ 1     Plaintiff, Kamil Kordas, filed a complaint against his employer, Bob's All Bright Electric,

Inc. (All Bright), claiming, among other things, intentional misconduct and negligence after his

coworker, Thomas Clarizio (Thomas), struck him over the head with a shovel while having a

psychotic episode. Kordas alleged that the company, owned and operated by Thomas's father,

knew or should have known that Thomas had mental health issues, negligently hired and

supervised Thomas, and intentionally concealed Thomas's dangerous propensities. All Bright moved for summary judgment, asserting that Kordas's claims were barred by the exclusive remedy provision of the Workers' Compensation Act (Act) (820 ILCS 305/5(a) (West 2022)). The circuit court granted All Bright's motion, and Kordas appeals. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3        All Bright is an electrical contracting company owned and operated by Robert Clarizio (Bob). On November 16, 2020, Kordas and Thomas, Bob's 26-year-old son, were installing an electrical panel in a client's garage. At lunch, Kordas and Thomas went their separate ways. When they returned, Kordas continued to work on the panel. As he knelt down to inspect it, Thomas picked up a shovel, struck Kordas in the back of the head multiple times, and fled the scene in his company van.

¶ 4        Bob received a call from the client around 2:30 p.m. that afternoon stating that something had happened to Kordas at the jobsite. When Bob arrived, he observed Kordas with a cut on his head. Bob drove Kordas home and left. Shortly thereafter, Kordas lost consciousness, and his wife took him to the hospital. He was admitted and released four days later.

¶ 5        Kordas filed a four-count complaint against All Bright and Thomas, alleging that All Bright intentionally failed to protect him and negligently hired and supervised Thomas (counts I, II, and III). The complaint also alleged that Thomas committed civil battery against Kordas (count IV).

¶ 6        During his discovery deposition, Kordas testified that he was 33 years old. At the time of the incident, Kordas had been working for All Bright for approximately 12 years. Kordas stated that Thomas started working for the company in 2015 and that he provided direct oversight of Thomas on the job every day. Although they worked together, Kordas and Thomas did not have a social relationship outside of work.

2

¶ 7        Kordas explained that on the morning of November 16, 2020, he and Thomas drove separately to the jobsite in their own company vans. He did not notice anything unusual about Thomas that day. Kordas and Thomas ate lunch in separate locations. When they returned to the site, Kordas continued to install the panel in the garage, and Thomas continued digging a trench. Kordas knelt down to work on the electrical panel, and the next memory he could recall was waking up in the hospital. He had no recollection of Thomas striking him or of Bob driving him home.

¶ 8        Kordas testified that earlier in the day Thomas refused to take directions from him and was generally "insubordinate" but that his attitude was "pretty normal." Kordas recalled that one time in March or April 2020, he sent Thomas home for insubordination. During the five years that they worked together, Thomas and Kordas had a few arguments, but they were never "heated." Thomas got upset when Kordas told him what to do, but he did not get angry. Kordas testified that he never felt threatened by Thomas or physically unsafe on the job. During the years Thomas worked with him, Thomas never had a physical altercation with Kordas or made threats of violence against Kordas.

¶ 9        Kordas stated that he was aware of Thomas's mental health issues prior to the incident on November 16, 2020. He knew that Thomas received mental health treatment twice in 2020—once in January and once in July. He also stated that Thomas had an "altercation" with his brother in January 2020, but he did not know the details surrounding that incident. When counsel asked Kordas if he knew what happened between Thomas and his brother, Kordas replied: "Not exactly, because [Thomas's brother] was the one that was telling me the details and he just told me that him and Thomas got into a physical altercation and that the police were involved."

¶ 10        In his deposition, Bob testified that he hired Kordas in 2009 and that Thomas started working for All Bright in February 2015. In November or December 2019, Bob visited Thomas in the hospital. He stated that Thomas was hospitalized for about four or five days because "they thought he was doing drugs but he wasn't." Bob testified that, prior to the November 2020 incident involving Kordas, he had no knowledge of Thomas's mental health struggles. He further stated that he did not notice any issues at work, except that Thomas appeared to be tired. When asked, Bob maintained that he was unaware that Thomas was taking medication as part of his mental health treatment in November 2020.

¶ 11        Bob further explained that, as far as he knew, Kordas's and Thomas's working relationship was "good." They had a few "typical" working disputes, but when Bob observed them working together, they were always "getting along and getting the job done." Bob admitted that Kordas could be demanding and that his demeanor was sometimes "dehumanizing." When asked to describe Kordas's working demeanor, Bob testified that Kordas had difficulty giving other employees instructions and would "put someone in a corner" instead of giving them a job. Bob testified that Kordas once let Thomas stand in the corner for the whole day instead of giving him something to do.

¶ 12        During his deposition, Bob stated that, in the five years Kordas and Thomas worked together, there was never any violence between them. Thomas never said that he wanted to injure Kordas, and Bob never instructed Thomas to injure Kordas. Bob testified that he was not aware of any arrests or complaints of violence against Thomas outside of work. According to Bob, Thomas only acted out violently at work the day he struck Kordas, on November 16, 2020. When asked if he had any recollection of a physical altercation between his oldest son and Thomas, Bob stated that he knew nothing about that incident.

4

¶ 13        Thomas testified that he worked for All Bright from 2014 until November 2020. On the afternoon of November 16, 2020, he and Kordas were installing an electrical panel in a client's garage. When Kordas knelt down, Thomas struck him over the head with a shovel. He admitted that he struck Kordas "more than once" and that Kordas appeared to lose consciousness. Following the incident, Thomas "ran away" in the company van. He was later arrested at his home. Thomas testified that he pled guilty to criminal charges stemming from the incident and was currently serving a term of probation.

¶ 14        Thomas attributed his behavior on November 16, 2020, to his mental health issues. He testified that he was diagnosed with bipolar disorder in January 2020 and prescribed antipsychotic medication to treat his mental illness. He stated that Kordas had done nothing to precipitate his actions. He considered Kordas a friend and never found him to be verbally abusive or insulting. When asked why he decided to strike Kordas with the shovel, Thomas replied:

> "I don't think I really had a decision to do it. I was very—having mental issues, but I left my pain meds at my house. *** It wasn't directly like against him and who he was and what he did. So I guess I think it was more of a—like, I can't really explain it."

¶ 15        Thomas testified that he was hospitalized four times in 2020 for mental health treatment— once in January, May, July, and October. He claimed that his father was aware of his January 2020 involuntary commitment, his bipolar diagnosis, his prescribed medications, and his four hospitalizations in 2020. Thomas testified that prior to the incident on November 16, 2020, he had not been involved in any violent altercation or threatened violence against anyone.

¶ 16        All Bright moved for summary judgment on counts I, II, and III, arguing that Kordas's claims were barred by the exclusive remedy provision of the Workers' Compensation Act and that Kordas was unable to prove that any exceptions to the provision applied. The circuit granted the

motion, awarding judgment in All Bright's favor, and subsequently denied Kordas's motion to reconsider, finding the issue immediately appealable under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Kordas now appeals.

¶ 17                                   II. ANALYSIS

¶ 18        Summary judgment is proper when the pleadings, depositions, and admissions on file, along with any affidavits, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *A.B.A.T.E. of Illinois, Inc. v. Quinn*, 2011 IL 110611, ¶ 22. We review the trial court's decision to grant summary judgment *de novo*. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 309 (2010).

¶ 19        In Illinois, the workers' compensation statute establishes a system for paying compensation to workers who are accidentally injured or killed in the course of their employment. See 820 ILCS 305/1 *et seq.* (West 2022). Section 5(a) of the Act provides that an employee injured on the job normally cannot sue his employer or coworkers, provided that the employee is entitled to receive workers' compensation benefits:

> "(a) Except as provided in Section 1.2, no common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act ***." *Id.* § 5(a).

More specifically, the Act operates to make workers' compensation benefits the exclusive remedy for an employee who is injured while acting in the course and scope of his employment. *Fregeau v. Gillespie*, 96 Ill. 2d 479, 484 (1983). Further, section 11 of the Act provides that "the compensation herein provided *** shall be the measure of the responsibility of any employer ***

6

for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act." 820 ILCS 305/11 (West 2022).

¶ 20     The exclusive remedy provision in section 5(a) "is part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prosect of large damage verdicts." (Internal quotation marks omitted.) *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462 (1990). Because the Act imposes liability without fault and consequently prohibits common-law claims by employees against their employers, any exception to the exclusive remedy provision that would allow it to be circumvented " 'must be strictly construed.' " *Garland v. Morgan Stanley & Co.*, 2013 IL App (1st) 112121, ¶ 51 (quoting *Rosales v. Verson Allsteel Press Co.*, 41 Ill. App. 3d 787, 789 (1976)).

¶ 21     Once an employer asserts that a claim is precluded under the exclusivity provision of the Act, the burden shifts to the employee to establish that his or her claim falls within one of the exceptions. *Price v. Lunan Roberts, Inc.*, 2023 IL App (1st) 220742, ¶ 22. To avoid the bar of the exclusive remedy provision, the employee must demonstrate that the injury (1) was not accidental, (2) did not arise from his or her employment, (3) was not received during the course of employment, or (4) was not compensable under the Act. *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 237 (1980).

¶ 22     On appeal, Kordas argues that the court erred in granting summary judgment on the basis that the Act provides an exclusive remedy for his injury. He claims that genuine issues of material fact exist as to three of the four expectations, specifically (1) whether his injury was accidental based on All Bright's actual knowledge and intentional concealment of Thomas's condition,

7

(2) whether Thomas's outburst was motivated by personal animosity that did not arise from Kordas's employment, and (3) whether his injuries are compensable under the Act.

¶ 23                                    A. Accidental Injury

¶ 24        Kordas first contends that he is not barred from bringing common-law claims against All Bright because his injuries were not "accidental" as that term is used in the Act. Specifically, he claims that the attack was not accidental because All Bright knew that Thomas was violent and knowingly concealed his violent tendencies.

¶ 25        In *Meerbrey*, the Illinois Supreme Court defined an "accidental" injury received during the course of employment as "anything that happens without design or an event which is unforeseen by the person to whom it happens." (Internal quotation marks omitted.) *Meerbrey*, 139 Ill. 2d at 463. The court further emphasized:

> "Such injuries are also accidental from the employer's point of view, at least where the employer did not direct or expressly authorize the co-employee to commit the assault. Because injuries intentionally inflicted by a co-worker are accidental from the employer's point of view, the employer has a right to consider that the injured employee's sole remedy against the employer will be under the workers' compensation statute." *Id.* at 463-64.

In other words, unless an employer commits or expressly authorizes an employee to commit an intentional tort against a coemployee, the Act prohibits common-law actions seeking damages for the coemployee's injuries. See *id.*; see also *Rodriguez v. Frankie's Beef/Pasta & Catering*, 2012 IL App (1st) 113155, ¶ 20.

¶ 26        In this case, the exclusive remedy provision of the Act bars Kordas's action because he has not alleged that All Bright committed, or expressly authorized Thomas to commit, an intentional tort against him. Carelessly and recklessly allowing an employee to work unsupervised on a jobsite

8

and to work with other employees when the employer knew or should have known of his dangerous propensities is not an intentional act.

¶ 27    To avoid the exclusivity provision, Kordas maintains that All Bright intentionally concealed the dangers of Thomas's mental instability. We agree with the underlying premise that the Act does not bar a common-law cause of action against an employer for injuries that the employer or its alter ego intentionally inflict on an employee, nor does it permit an employer who encourages or commands an intentional tort to use section 5(a) as a shield. See *Handley v. Unarco Industries, Inc.*, 124 Ill. App. 3d 56, 71-72 (1984) (holding that exclusivity provision did not bar common-law claims where employer failed to disclose known danger of asbestos). However, to successfully evade the confines of the workers' compensation statute, the record must demonstrate an *intentional* act on the part of the employer, showing that the employer acted intentionally or intentionally instructed the employee to act.

¶ 28    Again, we find the discussion in *Meerbrey* helpful:

> " 'The legal reason for permitting the common-law suit for direct assault by the employer *** is that the same person cannot commit an intentional assault and then allege it was accidental. This does not apply when the assailant and the defendant are two entirely different people. Unless the employer has commanded or expressly authorized the assault, it cannot be said to be intentional from his standpoint any more than from the standpoint of any third person. Realistically, it to him is just one more industrial mishap in the factory, of the sort he has the right to consider exclusively covered by the compensation system.' " *Meerbrey*, 139 Ill. 2d at 466 (quoting 2A Arthur Larson, Law of Workmen's Compensation § 68.21 (1988)).

9

Here, the record is devoid of any suggestion that All Bright committed an intentional assault, directly or indirectly, against Kordas.

¶ 29    Kordas claims that there is evidence of an intentional act because All Bright knew that Thomas was dangerous. In support of his position that a material issue of fact exists, Kordas relies on *Handley* and *Daniels v. Venta Corp.*, 2022 IL App (2d) 210244.

¶ 30    In *Handley*, the plaintiffs asserted that their asbestos exposure claims circumvented the exclusive remedy provision of the Workers' Occupational Diseases Act (Ill. Rev. Stat. 1981, ch. 48, ¶¶ 172.40, 172.46)[1] and that plaintiffs should be allowed to pursue their civil claims against their employer because the company knew about the dangers of asbestos and concealed the information from them. *Handley*, 124 Ill. App. 3d at 58. On appeal, the court examined the plaintiffs' allegations of knowledge and concealment in their complaint and determined that they were sufficient to overcome a section 2-619 (735 ILCS 5/2-619 (West 2022)) motion to dismiss filed by the employer. *Handley*, 124 Ill. App. 3d at 72. However, the court cautioned that "it remains to be seen what proof plaintiffs have to substantiate these allegations." *Id.*

¶ 31    Here, unlike the plaintiffs in *Handley*, Kordas alleges that All Bright concealed the dangers of working with Thomas but does not allege that the company intentionally commanded or authorized Thomas to strike Kordas on the head with a shovel multiple times. Further, Kordas fails to point to anything in the record to support his claim that, like the employer in *Handley*, All Bright knew that Thomas was violent and intentionally concealed his violent tendencies from its employees. Although Thomas testified that Bob was aware his son was taking prescribed medication and had been recently hospitalized for mental health reasons, the record fails to

---

[1]The Workers' Occupational Diseases Act is currently found at 820 ILCS 310/1 *et seq.* (West 2022).

10

substantiate Kordas's claims that Bob knew Thomas was violent and intentionally withheld that information from All Bright's employees. In fact, based on the deposition testimony, no question of fact exists that Thomas had expressed any violent tendencies in the workplace prior to the November 16, 2020, attack.

¶ 32    Moreover, we disagree with Kordas's application of *Daniels*. In that case, the record indicated that the employer knew its workers were handling hazardous asbestos that would be medically compromising yet concealed the danger instead of implementing safety precautions. *Daniels*, 2022 IL App (2d) 210244, ¶ 28. The appellate court held that the employer's concealment of the danger of unprotected asbestos exposure demonstrated the commission of an intentional tort that fell outside the exclusive remedy provision of the Act. See *id.* ¶ 29. Again, the pleadings, depositions, and admissions in this case show that no genuine issue of material fact exists as to All Bright's knowledge that Thomas was violent. Nothing in the record indicates that All Bright knew Thomas had a *violent* history or a propensity for *violence* in the workplace and that, rather than warning Kordas, the company forced him to work with Thomas. Accordingly, Kordas failed to sufficiently prove that All Bright intended to harm him, as required to circumvent the exclusive remedy provision of the Act.

¶ 33                          B. Injury Arising from Employment

¶ 34    Next, we consider the second factor—whether Kordas's injury arose from his employment. An employee's injury from a physical altercation with a coworker arising out of a dispute involving the employer's work is a risk incidental to employment and is compensable exclusively under the Act. *Price*, 2023 IL App (1st) 220742, ¶ 19. "However, where a physical confrontation between two employees is *purely personal* in nature, the resulting injuries cannot be said to have arisen out of the employment." (Emphasis added.) *Id.* Put another way, an injury resulting from a fight at

11

work based on a personal dispute, rather than a quarrel over the manner of conducting the work, falls outside the exclusive remedy provision of the Act. See *Martinez v. Gutmann Leather, LLC*, 372 Ill. App. 3d 99, 103 (2007) (exclusivity provision did not bar plaintiff's wrongful death action where evidence indicated that an employee who shot a coworker on the employer's premises had a history of a hateful and extremely bitter relationship with the coworker). A "purely personal dispute" is one in which the conflict is "completely unrelated to the employer's work." (Internal quotations marks omitted.) *Rodriguez*, 2012 IL App (1st) 113155, ¶ 22.

¶ 35        Under the Act, the term "arising out of the employment" refers to the causal connection between the working conditions and the injury the employee suffers. (Internal quotation marks omitted.) *Id.* ¶ 21. "It must be apparent that employment increased the risk of injury, and that the employee would not have been subject to the same attack if he had encountered the offender for the first time upon the street." *Id.*

¶ 36        In *Rodriguez*, a dispute erupted between two employees, Edan Maya and Jose Rodriguez, regarding an employment position at Frankie's restaurant. *Id.* ¶ 5. The restaurant owner asked Maya to leave and "cool off." *Id.* ¶¶ 5-6. Maya returned the next day with a handgun and shot and killed Rodriguez. *Id.* ¶ 7. The witnesses all testified that the argument between Maya and Rodriguez involved Rodriguez's promotion to fry cook over Maya. *Id.* ¶¶ 6-9. The trial court granted summary judgment in favor of the restaurant owner, finding the exclusive remedy provision of the Act applied. *Id.* ¶ 11. In affirming the summary judgment order, the appellate court noted that the dispute that led to Rodriguez's death grew out of a quarrel over an employment position. *Id.* ¶ 22. The court then emphasized that, "[i]f Rodriguez had not been employed at Frankie's, it is unlikely he would have been involved in the altercation with Maya or subsequently shot by Maya." *Id.* Because nothing in the record indicated that the argument resulted from

12

anything other than the fry cook position, the court concluded that the trial court properly granted judgment in favor of Frankie's restaurant. *Id.*

¶ 37    Likewise, in *Price*, the court upheld the trial court's order granting summary judgment on the basis that the Act's exclusive remedy provision barred an administrator's wrongful death claim where the administrator failed to meet her burden of demonstrating a personal relationship. *Price*, 2023 IL App (1st) 220742, ¶¶ 30, 34. In that case, the plaintiff claimed that a personal relationship existed between the decedent and a coworker, who stabbed the decedent 27 times. *Id.* ¶ 4. On appeal, the plaintiff pointed to the fact that the decedent and his coworker spent time together outside of work and exchanged text messages regarding a possible drug transaction. *Id.* ¶ 23. However, the reviewing court determined that such evidence was speculative, at best, and concluded that "[t]he fact that [decedent] and [his coworker] had some degree of a personal relationship does not mean that the incident was caused by a purely personal dispute." *Id.* ¶ 27.

¶ 38    Similar to the plaintiffs' allegations in *Rodriguez* and *Price*, Kordas alleges that the dispute arose out of personal animosity and had nothing to do with Kordas's scope of employment. We find this argument slightly disingenuous. It is clear from the deposition testimony that Kordas and Thomas did not have a personal relationship outside of work. Moreover, all three deposed parties testified that any dispute between the two men was purely work-related. Kordas and Bob testified that Thomas refused to complete tasks that Kordas instructed him to complete on the job and that Kordas did not appreciate mentoring employees, and Thomas agreed with their testimony. Further, Thomas testified that Kordas did nothing to provoke the attack, work-related or otherwise. He testified that he had mental health issues, that he left his medication at home that day, and that his actions were not directed against Kordas personally. In other words, if Kordas had not been

13

working on an electrical panel as an All Bright employee that afternoon, it is unlikely he would have been attacked by Thomas.

¶ 39 Kordas's reliance on *Martinez* is also misplaced. There, the plaintiff filed a wrongful death complaint after an employee shot and killed a coworker at the end of his shift. *Martinez*, 372 Ill. App. 3d at 99-100. The appellate court reversed a section 2-619 dismissal based on the exclusivity provision of the Act, concluding that it could not be said as a matter of law that the occurrence arose out of or during the course of the decedent's employment. *Id.* at 103-04. The court did so in reliance on an affidavit in which the affiant stated that she lived with the decedent and had personal knowledge of the long-standing hatred between the two employees and that the coworker had recently threatened the decedent at their home. *Id.* at 103. Thus, in *Martinez*, the affidavit provided some evidence of a personal dispute, which was sufficient to overcome a section 2-619 dismissal. Here, no such evidence was presented.

¶ 40 C. Compensable Claims Under the Act

¶ 41 Last, Kordas argues that he has no compensable claim under the Act because "none of the bills have been paid by workers' compensation insurance." Under the Act, an employee may be denied workers' compensation benefits if he or she is the aggressor in an altercation with a coworker. See *Franklin v. Industrial Comm'n*, 211 Ill. 2d 272, 280 (2004) (noting that an employee's injury is not compensable under the Act when he or she is the aggressor in a fight with a coworker because the aggression negates all causal connection between work and injury). In this case, it is undisputed that Kordas was not the aggressor. Moreover, Kordas testified that he did not pursue workers' compensation benefits because he was advised not to make a claim by his attorney, not that he was denied benefits. As there is no evidence that Kordas's claim was not compensable under the Act, the fourth exception does not apply. Therefore, the trial court did not

14

err in applying the exclusive remedy provision of the Act and granting summary judgment in All Bright's favor.

¶ 42                                    III. CONCLUSION

¶ 43        The judgment of the circuit court of Du Page County is affirmed.

¶ 44        Affirmed.

¶ 45        JUSTICE ANDERSON, dissenting:

¶ 46        I dissent because I disagree with the majority's conclusion that Kordas's tort claims are barred by the exclusive remedy provisions of the Act. Further, I believe there are questions of material fact that make the entry of summary judgment inappropriate.

¶ 47        As the majority recognizes, a party can avoid the exclusive remedy bar by demonstrating that the injury (1) was not accidental, (2) did not arise from the party's employment, (3) was not received during the course of that employment, or (4) was not compensable under the Act. *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 237 (1980). Summary judgment should not be granted if the material facts are in dispute or if the material facts are not in dispute but reasonable persons might draw different inferences from the undisputed facts. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). In my view, a question of material fact exists as to whether the first and second exceptions apply here.

¶ 48        Regarding the first exception, the exclusivity provision of the Act does not bar a common-law cause of action against an employer for injuries that the employer or its alter ego intentionally inflicts upon an employee. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455 (1990); see *Collier*, 81 Ill. 2d 229; see also *Handley v. Unarco Industries, Inc.*, 124 Ill. App. 3d 56 (1984). Here, the question is not whether All Bright directed Thomas Clarizio to attack someone. It did not. Rather, the question is whether the company ignored or even concealed Thomas's mental health issues to

15

a degree that it intentionally placed Kordas in danger. Admittedly, the case law is predominately on the majority's side when it comes to intentional conduct. But in my view, the judiciary needs to reevaluate this line of cases.

¶ 49 Here, the evidence is sufficient to show that All Bright and its owner were fully aware that Thomas had serious mental health issues. Additional evidence suggests that this information was not disclosed to Kordas, however, and was, perhaps, even actively concealed. For example, there is evidence that Thomas had been in an altercation with at least one of his brothers severe enough for the Elgin police to be called. There is evidence that Thomas had been institutionalized for mental health reasons more than once in the year before the incident with Kordas. There is evidence that Thomas had suffered from long-term mental health problems for which he often failed to take his medicine. There is evidence Bob Clarizio was aware of all this.

¶ 50 At some point, negligent conduct may become intentional conduct. Indeed, intent "extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does." Prosser and Keeton on the Law of Torts § 8 at 35 (W. Page Keeton *et al.* eds., 5th ed. 1984); see Restatement (Second) of Torts § 8A at 15 (1965). Here, the evidence is sufficient to create a question of material fact as to whether All Bright's failure to warn, and potential concealment, rose to the level of intentional conduct, taking the complaint outside the Act's exclusive remedy provision.

¶ 51 Barring a claim like this one under the exclusivity rule leads to perverse results. If an employer merely neglects to warn its staff about a dangerous coworker, the exclusive remedy provision of the workers' compensation statute applies. But, if the employer goes a step further and deliberately conceals the danger, the exclusive remedy provision still applies. In other words, the law treats active concealment—an intentional act of deception—as no worse than ordinary

16

carelessness. That is not just counterintuitive; it is backwards. The worse the misconduct, the stronger the shield. Under our current case law, exclusivity becomes less a trade-off between compensation and the available tort remedies and more a reward for a tortfeasor's silence. I would hold that an employer's fraudulent concealment of an employee's known violent tendencies is sufficient to take this case outside the Act.

¶ 52    In addition, a question of material fact exists regarding the applicability of the second exception to the Act's exclusive remedy provision. "[W]here a physical confrontation between two employees is purely personal in nature, the resulting injuries cannot be said to have arisen out of the employment." *Price v. Lunan Roberts, Inc.*, 2023 IL App (1st) 220742, ¶ 19. Indeed, an injury resulting from a workplace confrontation based on a purely personal dispute, rather than a quarrel over the manner of conducting the work, falls outside the exclusive remedy provision of the Act. See *Martinez v. Gutmann Leather, LLC*, 372 Ill. App. 3d 99, 103 (2007) (exclusivity provision did not bar plaintiff's wrongful death action where evidence indicated that an employee who shot a coworker on the employer's premises had a history of a hateful and extremely bitter relationship with the coworker).

¶ 53    Here, the evidence shows that the relationship between Kordas and Thomas was personally volatile, that Thomas "hates" Kordas, that Thomas thinks he is a "cruel guy," and that Thomas "felt bad that [Kordas] is not dead" and, more generally, indicates that Thomas's feelings and subsequent attack on Kordas had nothing to do with their employment at All Bright. Thomas told police that he had hit Kordas as hard as he could and that he "doesn't feel remorse because he hates [Kordas] so much." This is not the sort of "risk inherent in employment" that the legislature intended the Act to cover. Viewed together, the evidence could cause the trier of fact to reasonably conclude that Kordas's injury was the tragic culmination of a personal vendetta. To stretch the

17

Act's exclusivity provision to cover such a grudge match is contrary to the central purpose of the Act. The Act is meant to protect employees against the hazards of a job, not to underwrite the costs of an employee's personal hatred.

¶ 54       In short, I disagree with my colleagues' opinion. Because I conclude that existing questions of material fact preclude the entry of summary judgment here, I respectfully dissent.

*Kordas v. Bob's All Bright Electric, Inc.*, 2025 IL App (3d) 240482

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 21-L-1065; the Hon. David E. Schwartz, Judge, presiding. |
| **Attorneys for Appellant:** | John D. Risvold, of Collins Law Firm, P.C., of Naperville, for appellant. |
| **Attorneys for Appellee:** | John B. Higgins, Andrea R. Zenker, and Brittany A. Coyle, of Higgins, Zenker & Coyle, P.C., of St. Charles, for appellee. |